IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JON STURGEON,

      Plaintiff,

vs.                                      No. CIV 02-1317   JB/WDS

ABF FREIGHT SYSTEMS, INC.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on the Defendant's Motion to Dismiss or for Summary Judgment on Counts II, IV, and V, filed November 18, 2002 (Doc. 7). The primary issue is whether Plaintiff Jon Sturgeon's ("Sturgeon") retaliation claim depends upon an interpretation of the collective bargaining agreement ("CBA") and falls with Section 301 of the Labor Management Relation Act's ("LMRA") preemption. Because the Court cannot, at this stage of the proceeding, say that the Court will have to interpret the CBA to determine Sturgeon's retaliation claim, the Court will deny the Defendant's Motion to Dismiss. The Court will grant the motion to dismiss the breach of contract claim with prejudice.

## BACKGROUND

In October of 2001, Sturgeon worked in Defendant ABF Freight Systems Inc.'s ("ABF") tire shop in ABF's Albuquerque terminal. See Complaint for Damages for Employment Discrimination ¶¶ 6, 9, 16, at 2-3, filed September 24, 2002 in the Second Judicial District of New Mexico and removed to this Court on October 21, 2002 ("Complaint")(Doc. 1). During Sturgeon's employment at ABF, he was a member of the International Brotherhood of Teamsters ("Teamsters"). See

Complaint ¶ 41, at 6. At all material times, the terms of a collective bargaining agreement, to which ABF and the Teamsters were signatories ("CBA"), bound the Teamsters and ABF, and governed them and Sturgeon. <u>See</u> Complaint ¶ 41-42, at 6-7; National Master Freight Agreement for the Period April 1, 1998 through March 31, 2003 ("National Agreement"); Western States Area Supplemental Agreements ("Supplemental Agreements").[1]

The CBA contains a detailed, mandatory "Grievance Procedure" that provides for "final and binding" determinations of "[a]ll factual grievances or questions of interpretation" arising under the CBA's terms. CBA, National Agreement at 35. The CBA's grievance procedure provides for a "Joint State Committee" that consists of both union and company representatives. The committee resolves the grievance by a "majority vote." <u>See</u> CBA, Supplemental Agreements at 10.

Sturgeon alleges that ABF provided the committee with information about a pending EEO charge of discrimination that Sturgeon had filed. <u>See</u> Complaint ¶ 50, at 8. Sturgeon maintains that ABF disclosed this information and, during the unrecorded "executive session," discussed the charge of discrimination. <u>See id.</u> ¶ 51, at 8. Sturgeon contends that the panel used this information as the basis for denying his contractual grievance and that ABF allegedly knew providing the information to the committee condemned his contractual rights. <u>See id.</u>

Sturgeon's Complaint alleges six claims, Claims I through VI (with Count VI mislabeled as Count "IV") against ABF. In this motion, ABF challenges three of Sturgeon's claims. One claim that is the subject of this motion, Count II (Constructive Discharge), has been dismissed with

---

[1] The National Master Freight Agreement apparently incorporates by reference the Western States Area Supplemental Agreements so that the two together make up the collective bargaining agreement between ABF and the Teamsters. This Court will refer to the agreements collectively as the "CBA."

prejudice.  See Stipulated Order of Dismissal, filed May 30, 2003 (Doc. 50).  The parties have also agreed that one other claim implicated by this motion – Count IV (Breach of Contract) – should be dismissed, with the only dispute being whether that dismissal should be with or without prejudice. See Plaintiff's Response to Defendant's Motion to Dismiss or for Partial Summary Judgment at 2, 4 (Count IV), filed December 2, 2002 ("Response")(Doc. No. 15).  The Court will thus focus on the remaining disputed claim: Count V (Retaliation).

## LEGAL STANDARD FOR MOTION

ABF moves to dismiss Count V of Sturgeon's Complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil Procedure.  Generally, if the court considers matters outside the complaint when ruling upon a rule 12(b)(6) motion to dismiss, the court treats that motion as a motion for summary judgment pursuant to rule 56.  See Fed. R. Civ. P. 12(b).  If, however, a plaintiff has notice of documents to which the movant's papers refer, and relies upon them in framing the complaint, the court need not convert the motion to one for summary judgment.  See GFF Corp. v. Associated Wholesale Grocers, Inc., 130 F.3d 1381, 1385 (10th Cir. 1997)(holding that, where a complaint refers to a document that is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss); United Transp. Union, Local 1745 v. City of Albuquerque, Civ. No. 98-577 BB/RLP, Memorandum Opinion and Order at 2 n.3 (D.N.M. June 18, 2001)(citing GFF Corp. and finding that the court's consideration of an agreement between the city and the union did not convert a motion to dismiss into one for summary judgment where "the agreement is referred to in the complaint and is central to the Union's claim.").

This rule is applicable here.  The only document "outside" the pleadings that the Court needs to rule upon the motion to dismiss is the CBA to which Sturgeon's Complaint refers.  See Complaint

¶ 42, at 7.  The Complaint specifically refers by name to the Western States Area Supplemental Agreements. The CBA is the foundation of one of Sturgeon's claims, Count IV ("Breach of Employment Contract").  Accordingly, the Court need not convert ABF's rule 12(b)(6) motion to dismiss to one for summary judgment. And Sturgeon does not dispute the propriety of considering the motion as a motion to dismiss.  See Response at 2 (citing Cortec Indus., Inc. v. Sum Holding, L.P., 949 F.2d 42, 47-48 (2d Cir. 1991), cert. denied, 503 U.S. 960 (1992)).

In considering a motion to dismiss, the Court must first "accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the non-moving party." Realmonte v. Reeves, 169 F.3d 1280, 1283 (10th Cir. 1999).  A dismissal is proper only "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle the plaintiff to relief." Mock v. T.G.& Y. Stores, Inc., 971 F.2d 522, 529 (10th Cir. 1992).  In evaluating those facts, Sturgeon receives the benefit of not only the facts pleaded, but the Court "must liberally construe the pleadings and draw all reasonable inferences in favor of the plaintiff."  Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 510 (10th Cir. 1998).

Sturgeon contends that Count V sufficiently states a claim for relief to avoid dismissal.

## I.   THE COURT WILL DISMISS STURGEON'S BREACH OF CONTRACT CLAIM WITH PREJUDICE.

Sturgeon concedes that ABF is correct that section 301 preempts his claim for breach of contract.  See  Response at 1.  Sturgeon is willing to stipulate to dismissal of Count IV.  See id. at 2.  The only dispute is whether that dismissal should be with or without prejudice.  See Joint Notice of Resolved Claims at 1, filed November 7, 2003 (Doc. No. 102).

As the parties have agreed, §301 of the LMRA completely preempts Sturgeon's breach of

contract claim.  The very nature of preemption is that a completely preempted state claim is not available under state law because federal law occupies the entire field of that claim.  It is unclear where Sturgeon could file a preempted claim or why he needs to try to preserve the claim.  In any case,  as a general matter, when federal courts have found state law claims to be completely preempted by federal law, the courts dismiss the state claims with prejudice.  See Botsford v. Blue Cross & Blue Shield of Montana, 314 F.3d 390, 399 (9th Cir. 2002)(holding that Federal Employees Health Benefits Act preempted state law claims and remanding with instructions to dismiss the state law claims with prejudice); Kaufman v. Allied Pilots Ass'n, 274 F.3d 197, 204 (5th Cir. 2001)(holding that, under San Diego Bldg. Trades Council v. Garmon, 359 U.S. 236 (1959),  federal law preempted plaintiff's state claims and remanding with instructions to dismiss with prejudice); Variety Children's Hosp., Inc. v. Century Medical Health Plan, Inc., 57 F.3d 1040, 1041 (11th Cir. 1995)(affirming dismissal with prejudice on ERISA preemption grounds).

This Court, therefore, finds that it is appropriate to dismiss Sturgeon's breach of contract claim in Count IV of his Complaint with prejudice.

## II.    SECTION 301 PREEMPTION OF STATE-LAW CLAIMS APPLIES TO THOSE CLAIMS WHICH DEPEND ON INTERPRETATION OF THE CBA.

Section 301 of the LMRA establishes federal jurisdiction for "[s]uits for violations of contracts between an employer and a labor organization representing employees" that the Act covers. 29 U.S.C. § 185.  As one treatise states:

> [P]reemption doctrine under section 301 rests on a disarmingly simple idea.  The Congress that enacted section 301 intended . . . that a comprehensive, unified body of federal law should govern actions concerning the interpretation and enforcement of collective bargaining agreements made under the aegis of the Act.  Within the domain of this federal law of collective agreements, all state regulation is excluded. It is excluded, moreover, without regard to particular harmonies or conflicts.

2 P. Hardin, <u>The Developing Labor Law</u> at 2243 (4th ed. 2001).  As the Supreme Court of the United States has explained, "any state-law cause of action for violation of collective bargaining agreements is entirely displaced by federal law under § 301."  <u>United Steelworkers v. Rawson</u>, 495 U.S. 362, 368 (1990).

 "[W]hen resolution of a state-law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law."  <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 220 (1985)(internal citation omitted).  On the other hand, as the Supreme Court in <u>Allis-Chalmers Corp. v. Lueck</u> noted,  "not every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law."  <u>Id.</u> at 211.  Claims sounding in tort and contract are both potentially subject to dismissal; however, the touchstone of the analysis is whether the claim's determination "depends upon the meaning of a collective-bargaining of agreement."  <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 405-406 (1988). Preemption only occurs if the claim is one in which the collective bargaining agreement's meaning is "inextricably entwined" with the claim at issue.  <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 213 (1985).

 The United States Court of Appeals for the Tenth Circuit in <u>Steinbach v. Dillon Cos.</u>, 253 F.3d 538, 541 (10th Cir. 2001), and in <u>Garley v. Sandia Corp.</u>, 236 F.3d 1200, 1208 (10th Cir. 2001), confirmed that, when a court must determine management's rights under a collective bargaining agreement to rule upon a cause of action, §301 completely preempts that cause of action.  On the other hand, the Tenth Circuit has observed that it is important to protect individuals' rights to claims where interpretation of the collective bargaining agreement is not essential.  <u>See Garley v. Sandia</u>

Corp., 236 F.3d at 1212 (quoting Albertson's Inc. v. Carrigan, 982 F.2d 1478, 1482 (10th Cir.

1993)).  See also Milton v. Scrivner, Inc., 53 F.3d 1118, 1121 (10th Cir. 1985)("When resolution of

a state claim depends upon analysis of the terms of a labor agreement, section 301 will preempt that

claim.").  Only when state law claims do not require interpretation of collective bargaining agreements

– that is, when an employee's cause of action requires "no more than reference to, as opposed to

analysis or interpretation of a collective bargaining agreement"-- does Section 301 not preempt the

claims.  See Jarvis v. Nobel/Sysco Food Servs Co., 985 F.2d 1419, 1427 (10th Cir. 1993)(holding

that Section 301 did not preempt the plaintiff's retaliatory discharge claim); Kerschion v. Public Serv.

Co. of N.M., 2002-NMCA-045, ¶ 9.

     With this in mind, the starting and ending place of the Supreme Court's analysis is a

determination whether the elements of the state law claim require interpretation of the CBA.

Compare Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. at 407 (holding that application of

employee's state tort remedy was not preempted by § 301 as application did not require interpretation

of CBA), with International Broth. of Electrical Workers v. Hechler, 481 U.S. 851, 859

(1987)(holding that tort claim under Florida law was not sufficiently independent of CBA to

withstand the preemptive force of § 301).  The Supreme Court's delineation has lead courts to

scrutinize the interrelationship of claims and collective bargaining agreements.  In Allis-Chalmers

Corp. v. Lueck, the Supreme Court preempted an individual claim for breach of contract pleaded as

a "breach of the duty of good faith" inherent in the contract.  See Allis-Chalmers Corp. v. Lueck, 471

U.S. at 211.

     Following the Supreme Court's announcement of the complete preemption doctrine, courts

have dismissed as preempted a variety of state law causes of action that required analysis of labor

agreements – breach of contract, invasion of privacy, defamation, and intentional infliction of emotional distress.  See, e.g., Steinbach v. Dillon Cos., 253 F.3d 538 at 543; Garley v. Sandia Corp., 236 F.3d  at 1215;  Kerschion v. Public Serv. Co. of N.M., 2002-NMCA-045, 45 P.3d 59; 2 P. Hardin, supra, at 2232-2234 & nn. 325-338 (cases cited therein).   Usually, however, claims for "retaliatory discharge" do not require any interpretation of a collective bargaining agreement.  See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. 399, 407 n.7 (1988); Jarvis v. Nobel/Sysco Food Servs Co., 985 F.2d at 1427; Kerschion v. Public Serv. Co. of N.M., 2002-NMCA-045, ¶ 12.

When confronted by an argument that preemption applies, it is important to recall that the doctrine of §301 preemption arose from a question whether state or federal law would apply to the interpretation of a contractual provision.  In Local 174, Teamsters, Chauffeurs, Warehousemen & Helpers v. Lucas Flour Co., 369 U.S. 95 (1962), the Supreme Court determined that only federal law could apply to interpreting a CBA and the right to strike.  See id. at 102.  The Lucas Flour opinion rejected the notion that "the courts of the States remain free to apply individualized local rules when called upon to enforce such agreements."  Id. at 103-104.

As the above cases illustrate, preemption is not so broad a doctrine as to sweep within it every claim pleaded.

## III.   THE COURT SHOULD NOT, AT THIS STAGE, DISMISS STURGEON'S RETALIATION CLAIM.

ABF contends that consideration and resolution of Count V, which asserts an alleged putative common law claim against ABF for retaliation, requires the analysis, interpretation, and application of the CBA.  It is important, however, to understand what Sturgeon does not allege.  Sturgeon does not argue that the grievance panel lacked jurisdiction to hear his claim.  See Response at 9.  Sturgeon

does not contend that the panel considered job-site matters beyond the contract's terms.  See id.
Similarly, Sturgeon does not suggest that the arbitral panel relied on arbitrary fact-findings.  See id.

What Sturgeon presents to the Court and to the jury is the allegation that ABF unreasonably
and improperly influenced the arbitral panel by advising it of a pending EEO charge, and inviting it
to base its deliberations on that fact.  See id.  Sturgeon alleges that ABF's pre-decision, ex parte
communications corrupted and compromised the CBA grievance procedure he followed in good faith,
resulting in the grievance panels' consideration of improper evidence.  Sturgeon's Complaint alleges
that ABF corrupted the grievance and appeal process by advising panel members before their
deliberations of his EEO complaint, which Sturgeon believes the panel discussed in their deliberations.
See Complaint ¶ 48-53, at 8.

As both parties recognize, there is formidable body of caselaw upholding the primacy of the
collective bargaining agreement and the need to support compulsory grievance arbitration processes.
Sturgeon does not quarrel with these principles.  His claim is for the damages done by a corrupted
process, and the need to address and remedy such corruption.  See Totem Marine Tug & Barge, Inc.
v. North American Towing, Inc., 607 F.2d 649, 653 (5th Cir. 1979)(reversing arbitral award
following receipt of ex parte information).

The Supreme Court has explained the risk of prejudice when the process is corrupted.  In
Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145 (1968), the Supreme Court
stated that "any tribunal permitted by law to try cases and controversies not only must be unbiased
but also must avoid even the appearance of bias.  We cannot believe that it was the purpose of
Congress to authorize litigants to submit their cases and controversies to arbitration boards that might
reasonably be thought biased against one litigant and favorable to another."  Id. at 150 (discussing

standards of judicial bias in context of arbitrator bias and imposing "appearance of bias" standard).

Courts have disapproved of ex parte contacts during arbitration. See Professional Air Traffic Controllers Org. v. National Labor Relations Auth., 685 F.2d 547, 600 (D.C. Cir. 1982)("Ultimately, an agency must be the guardian of its own honor.  If it permits interested persons to show contempt for its formal adjudicatory processes by the subversion of ex parte pleas and approaches, then those processes will indeed become contemptible.")(Robinson, J., concurring in result). "Ex parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award." Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1025 (9th Cir. 1991).  In other words, the ex parte presentation of evidence potentially prejudices the tribunal against the party not engaged in ex parte communications.  See Kirkland v. Arkansas-Best Freight System, Inc., 475 F. Supp. 180, 191 (E.D. Ark. 1978)(criticizing and finding against ABF for engaging in ex parte contacts), aff'd in substantial part, 629 F.2d 538 (8th Cir. 1980)).

While Sturgeon styles Count V in his Complaint as a state law claim for retaliation, in his Response, Sturgeon suggests Count V may be a different claim.  For example, Sturgeon states that ABF's alleged failure to abide by its contractual terms gives rise to a fair claim for that breach.  Sturgeon also contends that ABF is now relying on a contract it breached, and suggests equitable doctrines of unclean hand should prevent ABF from undermining the contract and then arguing preemption.  Sturgeon argues that ABF now invokes §301 preemption to foreclose any redress for this alleged misconduct.

ABF concedes that Section 301 does not preempt ordinary retaliatory discharge claims.  Such

-10-

claims typically involve the factual questions whether the employer discharged the plaintiff and whether the employer's motivation was to deter or to interfere with the employee's exercise of non-contractual rights.  See Lingle v. Norge Div. of Magic Chef, Inc., 486 U.S. at 405-406; Jarvis v. Nobel/Sysco Food Servs Co., 985 F.2d at 1427.  ABF contends, however, that Sturgeon's claim is far from ordinary.

To explain the basis for his retaliation claim in Count V, Sturgeon not only cites to, but actually quotes from, the CBA between the Teamsters and ABF.  See Response at 8 (quoting the CBA, National Agreement at 32).  Sturgeon emphasizes that he is seeking "redress" for alleged "corruption of the [grievance] process, as written."  Response at 8.  The CBA states: "All employees who file grievances under this Agreement and its Supplemental Agreements are entitled to have their cases decided fairly and promptly."  CBA, National Agreement at 32 (Grievant's Bill of Rights).  Sturgeon's reliance on the CBA to explain his claim, however, does not necessarily mean that the Court will be required to delve into the meaning or interpretation of the CBA in resolving Sturgeon's retaliation claim.

ABF goes too far in seeking to cast Sturgeon's allegations of a corrupted grievance process into the realm of preempted claims merely because it involves the grievance process.  ABF has not persuaded the Court that Sturgeon's allegations will require the Court to second-guess the meaning or content of the CBA.  At least on its face, Sturgeon's claim allows for the possibility of a due process inquiry independent of the details of the contract-specified process itself.

The Court is thus not convinced at this stage that Sturgeon's retaliation claim will call upon the Court to enforce or interpret the CBA; this claim may merely invoke the Court's authority to protect the rights of Sturgeon to be free from retaliation and discrimination, and to be accorded due

-11-

process.  Sturgeon does not seek to evade the grievance process or to challenge the sufficiency of its mechanisms or procedures.  See Response at 8.  On the other hand, it may become clearer as the case progresses that Sturgeon's claim for retaliation may require the analysis and interpretation of provisions of the CBA, but such a determination is better made after full discovery and on a motion for summary judgment, not on this early motion to dismiss.

While convincing the Court that his Count V may not require an interpretation of the CBA, Sturgeon has raised a doubt in the Court's mind that he is bringing a retaliation claim that New Mexico state law recognizes.  Instead of alleging that ABF discharged Sturgeon in retaliation for some exercise of non-contractual rights, at least in this count, he alleges procedural "retaliatory" irregularities in ABF's defense of his grievance during the CBA grievance process.  In particular, Sturgeon alleges that ABF "made known" to the grievance committee that Sturgeon "was pursing EEO remedies" and that this communication from ABF somehow "improperly and unlawfully influenced the hearing committee in whole and in part to vote to deny" his grievance.  See Complaint ¶ 50-52, at 8.   ABF suggests that no such claim exists or, more precisely, should exist.

ABF contends that the problems that such a retaliation claim raises are numerous and significant.  ABF argues that resolving the merits of the claim will not only require an analysis of the grievance process itself, which is set forth in the CBA, but will require an inquiry into the mental processes of the grievance committee members, whom the CBA invested with "final and binding" arbitral authority.  See Brief in Support at 10 (citing CBA).  Courts are reluctant to allow parties to interrogate non-judicial decision-makers about the reasons for their decisions.  See, e.g., Gary W. v. Louisiana Dep't of Health & Human Resources, 861 F.2d 1366, 1369 (5th Cir. 1988)(disallowing inquiry into the bases of a special master's decisions).

The Court need not address on this motion the difficult issue of how Sturgeon will prove his case or whether New Mexico recognizes such a claim. Sturgeon's concern raises the issue whether it would be appropriate to seek discovery of hearing officers. As both parties correctly note, courts defer to the terms of a CBA and to the arbitration/dispute resolution process terms in particular. See, e.g., United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-69 (1960). Deference to the agreement's terms does not, however, invariably result in blind acceptance of the result of a process corrupted by ex parte contacts.[2]   And more important for this motion, even if legitimate practical concerns surround the mechanics of this inquiry, they do not invoke the preemption spectrum.

While the Court will find that, at this stage, it cannot say that §301 preempts Sturgeon's state law claim in Count V, the Court is not stating that there is a state claim like Sturgeon describes in his Response. The ex parte corruption cases that Sturgeon relies upon involve either unfair labor practice charges properly filed with the appropriate administrative agencies pursuant to federal labor law, see, e.g., Professional Air Traffic Controllers Organization v. National Labor Relations Authority, 685 F.2d 547, or post-arbitration challenges pursuant to the Federal Arbitration Act to an arbitral award, see Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145.  As in those cases, Sturgeon could have filed an unfair labor practice charge with the NLRB or otherwise filed a timely challenge to the award under the appropriate federal law, provided he did so within the limitations period.  Sturgeon, however, has not done so.

---

[2] Courts have  approved discovery of the decisional process when ex parte contacts are at issue.  In Professional Air Traffic Controllers Organization v. National Labor Relations Authority, 685 F.2d 547 (D.C. Cir. 1982), the United States Court of Appeals for the District of Columbia invested a special master and charged him with the responsibility of investigating, deposing, and discovering ex parte contacts and exploring the decisional processes of the members of NLRA.  See id. at 557.

Sturgeon argues that, in the event that the Court requires him to plead his claim as a more traditional § 301 claim, he requests leave to amend his Complaint to more fully state a traditional claim under that statute. <u>See</u> Response at 12 (citing <u>Jarvis v. Nobel/Sysco Food Servs. Co.</u>, 985 F.2d 1419).  ABF filed this motion on November 18, 2002.  The deadline for Sturgeon to amend his pleading was May 7, 2003.  If Sturgeon wanted to amend his claim, he should have done it before the deadline for doing so.  Also, discovery proceeded in this case, and discovery ended on September 30, 2003.[3]  The Court will not allow Sturgeon to amend his Complaint at this late stage.

**IT IS ORDERED** that the Defendant's Motion to Dismiss or for Partial Summary Judgment is granted in part and denied in part.  Count IV of the Plaintiff's Complaint for breach of contract is dismissed with prejudice.  The Defendant's motion to dismiss Count V is denied.  The Plaintiff's request to amend is denied.

_____
UNITED STATES DISTRICT JUDGE

Ripley B. Harwood
Brian A. Thomas
Jeffries, Rugge & Rosales P.C.
Albuquerque, New Mexico

      Attorneys for the Plaintiff

Scott D. Gordon
Jeffrey L. Lowry
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

      Attorneys for the Defendant

_____

[3] This case was transferred to Judge Browning on August 28, 2003.

-14-