IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JON STURGEON,

    Plaintiff,

vs.                                                                No. CIV 02-1317   JB/WDS

ABF FREIGHT SYSTEMS, INC.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant ABF Freight System, Inc.'s ("ABF") Motion for Judgment on the Pleadings, filed June 10, 2003 (Doc. 55). The primary issue is whether the Supreme Court of New Mexico's opinion in Silva v. American Federation of State, County and Municipal Employees, 2001-NMSC-038 requires dismissal of Plaintiff Jon Sturgeon's ("Sturgeon") state law claim in Count V. Because ABF could not discharge Sturgeon without cause, the tort of retaliation is not available to him, and the Court will enter judgment for ABF on Count V. The Court will also dismiss Sturgeon's Count VI[1] with prejudice.

## BACKGROUND

All the material facts are set forth in the pleadings, if not solely in five paragraphs of the Complaint. Sturgeon is an eighteen-year veteran employee. At all material times, Sturgeon was a member of the International Brotherhood of Teamsters ("Teamsters"). See Complaint for Damages for Employment Discrimination ¶ 41, at 6, filed September 24, 2002 in the Second Judicial District of New Mexico and removed to this Court on October 21, 2002 ("Complaint")(Doc. 1). At all

---

[1] In his Complaint, Sturgeon mislabled his Count VI as Count IV.

material times, the terms of a contract between the Teamsters and ABF titled "The Western States Area Supplemental Agreements to the National Master Freight Agreement" bound them. See id. ¶ 42, at 7.

Sturgeon alleges in his Complaint that, at all material times, the Teamsters' collective bargaining agreement ("CBA")[2] which covered him provided, in relevant part, that he "could not be terminated except for just cause" absent exceptional circumstances not applicable here. Complaint ¶ 43, at 7. ABF does not dispute this allegation. See id. ¶ 44a, at 7. The contract between the Teamsters and ABF "guaranteed" Sturgeon "procedural due process." Id. ¶ 44a, at 7.

The contract specified: "All employees who file grievances under this Agreement and its Supplemental Agreements are entitled to have their cases decided fairly and promptly." CBA, National Agreement at 32 (Grievant's Bill of Rights). Under the CBA, the panel's decision was final and unappealable by way of any further administrative process. See CBA, Supplemental Agreements at 13 (Grievance Procedure). Sturgeon invoked his grievance rights under the contract between the Teamsters and ABF by filing and pursuing a grievance, and by attending a hearing on that grievance in Las Vegas, Nevada. See id. ¶ 47, at 7.

ABF's Director of Industrial Relations appeared for Sturgeon's union hearing. According to Sturgeon, it was ABF's Director who told one or more panel members off the record that Sturgeon had filed on EEO Complaint. See Complaint ¶ 50, at 8. ABF disclosed this information before the unrecorded "executive session" in which the panel voted. Complaint ¶ 51, at 8. Whether the panel

---

[2] The agreement between ABF and the Teamsters encompasses two documents -- the National Master Freight Agreement ("National Agreement") and the Western States Area Supplemental Agreements ("Supplemental Agreements") -- and the Court will refer to the two collectively as the "CBA."

used this information as the basis for denying Sturgeon's contractual grievance may not be known. The names of the hearing panel individuals have only recently been discovered. Sturgeon expects the Teamsters will resist efforts to discover how individual members voted, the content of their secret discussions, or whether ABF's disclosures influenced the vote.

Sturgeon relates that he was questioned about the EEO Complaint during the hearing. See Deposition of Jon Sturgeon at 83, lines 8-16 (taken March 26, 2003). One of the panel members, a management representative whom Sturgeon perceived as the panel chairman, approached him before the vote and indicated to him that filing an EEO Complaint was tantamount to suing ABF "where I come from". See id. at 85, line 21, to 86, line 7.

Sturgeon refuses to dismiss and continues to pursue his claim of retaliation.

## LEGAL ANALYSIS

### I. THE COURT WILL DISMISS STURGEON'S CLAIMS IN COUNT VI WITH PREJUDICE.

Count VI of Sturgeon's Complaint is a claim for discrimination under the Occupational Safety and Health Act ("OSHA") and the New Mexico Occupational Safety and Health Act ("NMSHA"). See Complaint ¶ 55, at 8. ABF's Motion for Judgment on the Pleadings asks the Court to dismiss this claim and Sturgeon, in his Response, agrees that neither OSHA nor NMOSHA "support a private right of action for discrimination based in whole or in part on the voicing of workplace safety concerns." Plaintiff's Response to Defendant's Motion for Judgment on the Pleadings at 7, filed June 24, 2003 ("Response")(Doc. 61). Sturgeon, therefore, agrees to voluntarily dismiss Count VI without prejudice. See id. ABF, however, contends that the dismissal of this claim should be with prejudice. See Reply Brief in Support of Motion for Judgment on the Pleadings at 1, filed July 11,

2003 ("Reply")(Doc. 68).

The Court agrees with ABF. If Count VI asserts an improper or nonexistent cause of action, Sturgeon should not be able to reassert -- or threaten to reassert -- this claim at a later date. The propriety or existence of the claim will not change. The Court will, therefore, dismiss Sturgeon's claims for OSHA and NMOSHA discrimination in Count VI with prejudice.

**II.    THE NEW MEXICO SUPREME COURT'S DECISION IN SILVA V. AFSCME PRECLUDES STURGEON FROM PURSUING HIS STATE CLAIM FOR RETALIATION IN COUNT V.**

In Silva, the Supreme Court wrote that the issue it was addressing was "whether Gandy[ v. Wal Mart Stores, 117 N.M. 441, 872 P.2d 859 (1994)] allow[s] a plaintiff who is not an at-will employee to pursue an action for the tort of retaliatory discharge." Silva v. AFSCME, 2001-NMSC-038, ¶ 21 (internal quotation marks and citation omitted). On November 26, 2001, the Supreme Court stated that the tort of retaliatory discharge is "limited to those cases in which the employee can be fired without just cause." Silva v. AFSCMA, 2001-NMSC-038, ¶ 16. In Silva, the Supreme Court confirmed that the tort of retaliatory discharge is "a limited exception" to the at-will employment rule. Id. ¶ 11. It also emphasized the New Mexico Court of Appeals' observation that the tort is meant to protect job security, not provide "reparation for every conceivable ill." Id. (quoting Vigil v. Arzola, 102 N.M. 682, 689, 699 P.2d 613, 619 (Ct. App. 1983)). Implicit in Silva is the notion that the plaintiff had available additional enforceable contract rights and remedies.

Sturgeon's "Count V – Retaliation" is an unusual cause of action. It is grounded upon allegations regarding the union-management grievance procedure that the CBA between the Teamsters and ABF established. See Complaint ¶¶ 46-52, at 7-8 ; id. ¶ 41-42, at 6-7. While the Court has rejected ABF's argument that § 301 of the Labor Management Relations Act ("LMRA")

clearly preempts Sturgeon's attack on the union grievance proceedings, and in particular the "executive deliberations" of a union-management panel, the CBA's grievance proceedings are important to his claim. See Memorandum Opinion and Order at 14, filed January 7, 2004 (Doc. 118).

Sturgeon argues that the law should charge a person like ABF's Director with actual knowledge that the information he provided to the panel is irrelevant and potentially fatally prejudicial to the fair hearing to which Sturgeon was entitled under the CBA. See Response at 5. He further argues that the Court should view ABF's willful disclosure of this fact as having presumptively prejudiced Sturgeon. See id. Sturgeon contends that ABF does not have a clean record regarding such misconduct. See id. (citing Kirkland v. Arkansas Best Freight System, Inc., 475 F. Supp. 180, 191 (E.D. Ark. 1978)(criticizing and finding against ABF for engaging in ex parte contacts), aff'd in substantial part, 629 F.2d 538 (8th Cir. 1980)).

Sturgeon's argument is that, had ABF not secretly and with bad motive informed the union-management panel of his EEOC charge, and had the panel remained ignorant of that charge, the panel members would have reached a different conclusion about the merits of Sturgeon's grievance and would have ordered ABF to return Sturgeon to work. Sturgeon's Count V is a claim of retaliation, based on the telling of a truthful fact, that seeks to hold ABF liable for ABF's alleged constructive termination of Sturgeon from employment. According to Sturgeon, ABF's improper actions during his union grievance hearing resulted in the loss of his job, either directly or because the panel did not award Sturgeon reinstatement, and ABF should, accordingly, pay damages. See Complaint ¶ 53, at 8 ; Requested Relief ¶ A-E, at 9.

It is important to emphasize what the Court need not decide on this motion. First, the Court need not decide whether informing union-management committee members that Sturgeon had filed

an EEOC charge – a truthful statement applicable to many employees each year – could be an unlawful activity. Second, the Court need not decide whether Sturgeon could use this state law claim and the federal court to attack the deliberations of neutral panel members, half of whom are union and half are management. Third, the Court need not decide whether Sturgeon could offer the Court any evidence that panel members made their decisions for an unlawful reasons rather than because Sturgeon's claim was substantially without merit. Finally, the Court need not revisit whether § 301 of the LMRA preempts any portion of Sturgeon's claim.

Sturgeon does not allege that the grievance panel lacked jurisdiction to hear his claim. See Response at 2. Sturgeon does not argue that the panel considered job-site matters beyond the contract's terms. See id. at 3. Similarly, Sturgeon does not suggest that the panel relied on arbitrary fact-findings. See id.

What Sturgeon presents is a claim that ABF improperly sought to influence, and may have in fact influenced, the panel by advising it of his pending EEO discrimination complaint before its deliberations, invited it to base its deliberations on this information, and thereby corrupted the grievance process. See Complaint ¶ 48-53, at 8. Sturgeon's claim is for ABF's corruption of his chance to get his job back without resort to protracted litigation. Sturgeon has alleged that ABF engaged in ex parte contacts which may have subverted the CBA hearing process. In such instances, suit against the employer or against the union may not be barred. See, e.g., Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 567 (1976).

The Court does not doubt the danger of ex parte contacts:

> [A]ny tribunal permitted by law to try cases and controversies not only must be unbiased but also must avoid even the appearance of bias. We cannot believe that it was the purpose of Congress to authorize litigants to submit their cases and

-6-

>controversies to arbitration boards that might reasonably be thought biased against
>one litigant and favorable to another.

Commonwealth Coatings Corp. v. Continental Cas. Co., 393 U.S. 145, 150 (1968). Sturgeon may be right that a court should not accord preclusive effect to a secret ballot that misconduct may have tainted or to a process that was not fair. Sturgeon also may be right that courts should not permit the party charged with subversion to invoke a CBA as authority for denying Sturgeon the right to have his claim heard on the merits. The Court need not, however, decide these issues to resolve the motion.

The issue that the motion raises is whether, under New Mexico law, the holding in Silva is inconsistent with Sturgeon's claim for retaliation. New Mexico law limits the tort of retaliatory discharge to cases in which a "just cause" provision of a CBA does not cover a plaintiff. See Silva v. AFSCME, 2001-NMSC-038, ¶ 16, 21. A "just cause" provision of a CBA covered Sturgeon. Complaint ¶ 43, at 7.

The CBA also provided a grievance procedure that Sturgeon knew about and invoked. See Complaint ¶ 47, at 7. With respect to grievance proceedings in particular, the agreement provided a "Grievant's Bill of Rights" to ensure that the panel decide grievances "fairly" and to promote "confidence in the integrity of the grievance procedures." CBA, National Agreement art. 7, § 2, at 32. See Complaint ¶ 44a, at 7 (alleging that the agreement "guaranteed" rights of "procedural due process"). Sturgeon had rights as a "just cause" union employee, and he is the employee that the Supreme Court of New Mexico ruled in Silva v. AFSCME may not use the limited tort of retaliation to avoid a decision on the merits with which he disagrees.

Sturgeon agrees that ABF is correct that, if this were a cleverly concealed wrongful discharge

claim, Silva would preclude his retaliation claim because there is a CBA. See Response at 6. He also agrees that, if Count V were a claim for action short of discharge, a claim for retaliatory discharge would fail. See Vigil v. Arzola, 102 N.M. 682, 689, 699 P.2d 613, 620 (Ct. App. 1983)("What is at stake is job security, not reparation for every conceivable ill."). Sturgeon contends, however, that Count V is not for wrongful discharge and that Silva has no bearing on Count V.

Th Court disagrees. Sturgeon's allegations of ex parte conduct on ABF's part, and his attack on the neutral panel's reasons to deny his grievance, do not allow him to escape Silva's rule. Silva does not have an exception that covers this case, if it has any exceptions at all. Moreover, plaintiffs cannot use the tort of retaliation to revisit unfavorable grievance decisions or to attack the integrity of union grievance procedures. The tort does not offer "reparation for every conceivable ill." Silva v. AFSCME, 2002-NMSC-038, ¶ 11 (quoting Vigil v. Arzola, 102 N.M. at 689, 699 P.2d at 619). See Silva v. AFSCME, 2002-NMSC-038, ¶ 20 ("[T]he tort of retaliatory discharge was created to fulfill a limited purpose[.]").

One of the problems with Sturgeon's claim may be the name that he has given it. Sturgeon argues that to read Silva v. AFSCME as barring his suit would be to read Silva too broadly. Sturgeon is correct that Silva does not state that a defendant can take away an exclusive process by willful subversion and thus preclude all avenues of redress. He characterizes his claim as a "corruption of process" claim and then maintains that Silva has no bearing on such a claim. He contends that ABF denied him the right to fair process in an exclusive and preclusive forum akin to one under 42 U.S.C. § 1983 for denial due process. But because ABF is not a state actor is not a state actor, the constitutional precedent is not available to him. This is a common law claim.

Sturgeon also suggests that ABF has not offered a reason why his claim cannot be pursued

-8-

as a tort claim for its corruption of process akin to prima facie tort. Sturgeon has not pled prima facie tort and, rather than accusing ABF of lawful conduct, has alleged ABF acted unlawfully. This federal court is not the proper forum for creating a new state tort, after the Supreme Court of New Mexico has carefully restricted the torts of prima facie tort and the tort of retaliation. All that the Court needs to decide or should decide on this motion is whether Silva v. AFSCME precludes Sturgeon's tort of retaliation, the tort pled.

This case is primarily about Sturgeon's disability claims; his retaliation claim has raised a host of unrelated issues. It is an attempt, in one form or another, to have the Court second-guess the procedures and decision of a union-management grievance committee established under federal law pursuant to a CBA. There may be a federal vehicle to do that, but New Mexico's tort of retaliation cannot be so used.

Even though New Mexico's tort of retaliation does not provide a claim against ABF, that does not mean suit against the employer or the union is barred. See, e.g., 29 U.S.C. § 185 (§ 301 of the LMRA). Section 301 may provide some judicial relief for wrongful termination and to authorize a remedy for a perverted system. And § 301 does not preclude federal claims. Section 301 is premised on the assumption that a substitute, quasi-judicial process will meet minimum due process standards. Sturgeon might have been able to avail himself of this statutory remedy.

Similarly, Sturgeon might have availed himself of administrative remedies. He was aware of the CBA's grievance procedures and, if he believed then as he does now, that his union would not represent him fairly on that grievance or would collude with ABF to deprive him of his rights, he could have filed an unfair labor practice charge with the National Labor Relations Board ("NLRB"). See 29 U.S.C. §§ 158, 160. Such charges are investigated and, if found possibly meritorious, heard

by an independent government agency having no relationship with Sturgeon's employer or his union.

The federal courts have generally found remedies where there has been a corruption of the process. See, e.g., West v. Grand County, 967 F.2d 362, 370 (10th Cir. 1992)(rejecting claim that commissioners' decision in post-termination grievance procedure was flawed due to ex parte communications where the plaintiff failed to offer any evidence that such communications influenced the decision); Atchison, Topeka & S.F. Ry. Co. v. United Transp. Union (CT&Y), 175 F.3d 355, 357 (5th Cir. 1999)("[T]he [Railway Labor Act] provides that a reviewing court may set aside an adjustment board's award only in one of three circumstances: . . . (3) if fraud or corruption tainted the process."); M & A Elec. Power Co-op v. Local Union No. 702, 977 F.2d 1235, 1237 (8th Cir. 1992)(noting that ex parte communication between arbitrator and party before it constituted misbehavior, but finding that the arbitrator's decision was based on the testimony at the hearing rather than the ex parte communication); Totem Marine Tug & Barge, Inc. v. North American Towing, Inc., 607 F.2d 649, 653 (5th Cir. 1979)(reversing award following ex parte communication). The defendant bears some obligation to help protect the fairness of the process and engender an ethical process. See PATCO v. NLRA, 685 F.2d 547, 600 (D.C. Cir. 1982)("Ultimately, an agency must be the guardian of its own honor. If it permits interested persons to show contempt for its formal adjudicatory processes by the subversion of ex parte pleas and approaches, then those processes will indeed become contemptible.")(Robinson, J., concurring in result). "Ex parte evidence to an arbitration panel that disadvantages any of the parties in their rights to submit and rebut evidence violates the parties' rights and is grounds for vacation of an arbitration award." Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp., 935 F.2d 1019, 1025 (9th Cir. 1991). The need to protect a CBA's compulsory, binding arbitration process from unethical conduct flows from the due

process rights inherent and explicit in the CBA. "It is now well established that 'due process,' unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." Gilbert v. Homar, 520 U.S. 924, 928-29 (1997)(quoting Cafeteria & Restaurant Workers v. McElroy, 367 U.S. 886, 895 (1961)). "[D]ue process is flexible and calls for such procedural protections as the particular situation demands." Morrissey v. Brewer, 408 U.S. 471, 481 (1972); Tonkovich v. Kansas Bd. of Regents, 159 F.3d 504, 518 (10th Cir. 1998)("A fundamental principle of procedural due process is a hearing before an impartial tribunal.").

This need to protect the CBA's arbitration process from corruption, however, does not provide Sturgeon with a state cause of action for retaliation given the Supreme Court of New Mexico's unequivocal statements in Silva. As noted above, Sturgeon may not be left without recourse for violations of his common law due process rights pursuant to the CBA in the absence of this state retaliation claim. In addition to his contractual right to a grievance procedure under the CBA, Sturgeon may have or had both administrative and statutory remedies available to him.

In conclusion, because the CBA covering Sturgeon contained just cause and grievance provisions, New Mexico law, and particularly Silva v. AFSCME, bars his claim for retaliation pled in Count V. The Court will dismiss the state law portion of Count V with prejudice.

Sturgeon asks the Court to permit him to amend his Complaint if deemed necessary to preserve a viable claim for corruption of the grievance hearing process. This motion was filed on June 10, 2003. The deadline for Sturgeon to amend his pleading was May 7, 2003. Discovery ended on September 30, 2003. Sturgeon has not shown the Court how he could amend his state claim to make it a viable state claim. The Court will therefore deny Sturgeon's request for leave to amend.

**IT IS ORDERED** that the Defendant's Motion for Judgment on the Pleadings is granted.

The Court will dismiss the state claim set forth in Count V of the Complaint as well all claims in Count VI with prejudice and enter judgment for the Defendant and against the Plaintiff on the state claim in Count V of the Complaint and all claims in Count VI.  Sturgeon's request for leave to amend Count V is denied.

_____
UNITED STATES DISTRICT JUDGE

Ripley B. Harwood
Brian A. Thomas
Jeffries, Rugge & Rosales P.C.
Albuquerque, New Mexico

      Attorneys for the Plaintiff

Scott D. Gordon
Jeffrey L. Lowry
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Albuquerque, New Mexico

      Attorneys for the Defendant